IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARRIE RYAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No._____ |
| | § | |
| JOE HOLLMAN AND HOLLMAN, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Carrie Ryan, Plaintiff in the above entitled and numbered cause, and file this Original Complaint, complaining of Defendants, Joe Hollman and Hollman, Inc., and in support thereof respectfully show the Court the following:

### I.

### PARTIES

1. Plaintiff Carrie Ryan ("Ryan") is a resident of Rockwall County, Texas.

2. Defendant Joe Hollman is an individual residing in Dallas County, Texas and may be served with process at his place of business 1825 West Walnut Hill Lane, Suite 110, Irving, Texas 75038

3. Defendant Hollman, Inc. is a foreign corporation not registered to do business in Texas and may be served with process by and through its President, CEO and owner Joe Hollman at his place of business 1825 W. Walnut Hill Lane, Suite 110, Irving, Texas 75038.

## II.

## JURISDICTION

4. The Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §1343 because the claims arise under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C §§ 2000e *et seq.*).

5. Hollman, Inc. is and was at all relevant times an employer in Irving, Dallas County, Texas and employed more than 100 regular employees at the times of the acts of discrimination and civil rights violations occurred.

6. Hollman, Inc. at all times relevant to the claims asserted, engaged in an industry or enterprise affecting interstate commerce.

7. Hollman at all times relevant to these claims, resided in Irving, Dallas County, Texas.

## III.

## VENUE

8. Venue of this action is governed by 42 U.S.C. §2000e-5(f)(3) and is proper in the Northern District of Texas because Plaintiff was employed by Defendants in a position at the Irving, Texas location, and the incidents giving rise to this lawsuit occurred in Dallas County, Texas.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Ryan timely filed with the Equal Employment Opportunity Commission ("EEOC") on May 12, 2010, a charge of discrimination against Hollman, Inc., as required under Title VII and the Texas Labor Code. Attached hereto as Exhibit "A" and fully incorporated herein for all purposes is a true and correct copy of the Charge.

10. On May 12, 2010, the EEOC issued its "Notice of Right to Sue." Ryan timely files this lawsuit within 90 days of receipt of the EEOC's "Notice of Right to Sue."

## V.

## **FACTUAL BACKGROUND**

11. Carrie Ryan was hired by Hollman, Inc. on January 5, 2009 as a Sales Consultant in Door/Cabinet department. Ryan's primary duty was selling Cabinets in the residential market. Hollman, Hollman Inc.'s CEO and owner, hired Ryan. Hollman agreed to pay Ryan $5,400 per month.

12. Immediately upon being hired, Hollman began to pursue a romantic relationship with Ryan. Although there were several empty offices available, Hollman wanted Ryan close to him and assigned Ryan to a desk located in his office and approximately 3 feet from his desk. All other sales consultants had their own offices and did not have to share an office with Hollman. Hollman was very complementary of Ryan and her physical appearance, and always paid lots of attention to her. Hollman began to give Ryan gifts. For example, he gave her an IPod, clothes, jewelry, books, CD's and a brand new kitchen. Hollman often invited Ryan to lunch with him. He did not invite the other male Sales Consultants as often as he did Ryan. Hollman invited Ryan to lunch so often that it became a daily expectation that they would go to lunch together. These lunches lasted at least two hours. Before her first month was complete, Hollman raised her salary to $6,000 a month.

13. As time went on, Hollman became more and more aggressive in pursuing a romantic relationship with Ryan. At first he would invite Ryan to places; however, after a while, Hollman expected Ryan to be with him and accompany him. For example, Hollman made Ryan go swimming at his house and/or the Four Seasons. Hollman made Ryan go work out with him including one

occasion when he made her go to a yoga class with him. If Hollman had an event after hours, whether business or not, Ryan was expected to be Hollman's date. Hollman was very affectionate with Ryan both at the office and at the events she was required to attend; always hugging and touching her. Hollman made Ryan spend so much time with him, it made her feel very uncomfortable.

14. In April of 2009, Ryan mentioned to Hollman she needed a new car. A few days later Hollman told her to meet him at a dealership and had picked out a 2009 Lexus RX350, fully loaded, for her. Hollman told Ryan he was going to buy the car, put it in her name and allow her to pay him back with no interest by deducting the amount from her salary each month. Ryan did not want to spend that much money on a car but Hollman insisted this was the car she needed. Ryan tried to refuse but Hollman would not take no for an answer.

15. Hollman knew Ryan was a single mom and needed her job. Hollman took advantage of that and Ryan was afraid of losing her job if she did not go along with Hollman's requests. After the car purchase, Hollman got more and more aggressive. Ryan got more and more afraid. She began rejecting his advances by telling Hollman she did not like it or that he "creeped her out."

16. Hollman would tell Ryan "I'm drawn to you like a magnet" or "your eyes don't just look at me, they see right through me." Hollman was constantly telling Ryan how much he liked her.

17. The atmosphere in the office became extremely stressful, tense and difficult. Hollman's attraction and affection towards Ryan was apparent. Everyone thought Ryan and Hollman were having an affair. Ryan became the subject of office gossip and was excluded and ostracized by her co-workers. Hollman would constantly come by Ryan's desk to talk to her, rub her shoulders while she was typing. While at lunch or dinners, Hollman always tried to touch her, rub

her, or hold her hands.

18. The amount of time Hollman was requiring of Ryan after work hours also put a strain on her personal relationships. In particular, her boyfriend was extremely upset about the amount of time she had to spend with Hollman and the activities he required her to do. Eventually, the relationship failed. Hollman encouraged the break up and would often tell Ryan things such as "he's no good for you," or "I can be a better friend than he can."

19. Hollman also began telling Ryan stories about past relationships with women and their "arrangements." He would then ask Ryan "what do you think." Ryan would not engage him in that conversation. Hollman would then tell Ryan things such as, "I'm the best friend you're ever going to have; you should sell your house and come live with me." He would tell her she and her son could live with him as long as she wanted. Hollman also offered to put her son in the Highlands School where his children go to school.

20. One evening Hollman required Ryan to be his date for dinner with family and friends for Hollman's daughter's (Tammy) birthday. The venue for dinner was Nick & Sams. Afterwards they all went to the Joule Hotel for drinks before heading to Hollman's house. Hollman was again all over Ryan that evening and would not keep his hands off her. When they arrived at Hollman's house to pick up Ryan's son, who was being watched by Hillary, another employee and her boyfriend, Ryan's son was asleep in one of the bed rooms. Hollman demanded that Ryan stay the night because her son was asleep. Ryan did not want to stay and was very uncomfortable. She was even more uncomfortable because the bedroom her son was asleep in was Hollman's ex-wife's room. Ryan tried to get out of staying and told Hollman she needed to let her dogs out. Hollman told her she should not let her dog's rule her life and insisted she stay. Hollman would not take no for an answer and

was very demanding. Ryan felt obligated to stay. Hollman escorted her to the room and. on the way, had his hands all over her, and even grabbed her buttock. He also kissed her on the cheek and was headed for her mouth, but Ryan quickly pulled away and said "don't". Ryan was so uncomfortable, scared, and did not sleep. The next morning, as soon as her some woke up, she quickly left.

21. On November 13, 2009, Hollman took Ryan out to dinner at a restaurant called "The Keg." At this dinner Hollman had his hands all over Ryan. Ryan was uncomfortable. Hollman told Ryan "I thought you would have acted differently after I bought you the car." Ryan reminded Hollman she was paying him back. However, it was obvious he wanted her to be indebted to him. After dinner, Hollman and Ryan went back to Hollman's house together to get her car. Before she could get to her car, Hollman pulled her towards him and kissed her on the mouth. Ryan was in shock and embarrassed. She did not say anything and tried not to react. She confided in others at work about what happened and sought their advice. She then made every effort to not be alone with Hollman. Hollman began to sense her distance.

22. In December Hollman made Ryan be his date to two Christmas parties. She attended the Harwood Christmas party with Hollman. During the party he exhibited the same behavior he had in the past of touching her, rubbing her, and trying to hold her hand. After the party, while in the car, Hollman kissed Ryan on the mouth again. Ryan pulled away, did not respond and asked him not to do that again.

23. Ryan also attended another Christmas Party in December 2009 hosted by Hollman's lawyers. At this party, Hollman did the same thing, including kissing Ryan on the mouth. However, this time he kissed her in front of everyone at the party. Ryan completely rejected Hollman's advances. Hollman did not like the fact that Ryan would not respond to his advances and began to

demonstrate his anger by not speaking to her.

24. In January, 2010 Hollman told Ryan he was cutting her salary by $2,000 a month and was requiring her to work from home. No other sales person was required to work from home. Ryan tried to make the best of it and work through the technical difficulties of working from home with no support. Ryan knew Hollman was upset and that his actions were punitive because she rejected him. Ryan did not want to strain the relationship even more so she focused on the positive aspects and continued to do her job.

25. After not getting the reaction he wanted, Hollman cut Ryan's salary down to zero and based her pay on 100% commissions in May 2010. No other Sales Consultant in her department had their compensation changed based on 100% commissions. The effect of Hollman's decision was the inability of Ryan to make a living. She was unable to make her car payments to Hollman and was not allowed to work from the office. Ryan was constructively discharged from her employment from Hollman.

26. On May 19, 2010, Ryan notified Hollman, Inc. in writing she was making a sexual harassment complaint and had been constructively discharged. Hollman was notified of Ryan's claims and a demand for preservation of documents, evidence and electric information was made. Hollman, Inc. did not respond to Ryan's complaint.

VI.

CLAIMS

A. Gender Discrimination

27. Plaintiff incorporates by reference all of the allegations set forth in the preceding paragraphs above as if fully set forth at this point herein.

28. Plaintiff will show that Hollman and Hollman, Inc.'s aforementioned conduct violates the Texas Commission on Human Rights Act, Section 21.051 of the Texas Labor Code and/or Title VII of the Civil Rights Act of 1964, as amended (Title VII). Hollman and Hollman, Inc. committed an unlawful employment practice by discriminating against, sexually harassing, reducing her pay and constructively discharging Plaintiff because of her gender. More specifically, Hollman and Hollman, Inc. created a sexually hostile work environment by subjecting Plaintiff on a daily basis to the sexual advances Hollman, reducing her pay on two occasions and constructively discharging her after she rebuffed Hollman's advances.

29. As a direct and proximate result of Hollman's conduct as set forth herein, Plaintiff has suffered actual and compensatory damages, including back pay, front pay, loss of benefits past and future, loss of enjoyment of life, including emotional pain, suffering, inconvenience, and mental anguish. Plaintiff will show that Hollman's conduct as alleged herein was intentional and Hollman and Hollman, Inc. acted with malice and/or reckless indifference entitling Plaintiff to compensatory and punitive damages as allowed by Section 21.2585 of the Texas Labor Code and/or Title VII.

### B. Retaliation

30. Plaintiff incorporates by reference all of the allegations set forth in the preceding paragraphs above as if fully set forth at this point herein.

31. Hollman, Inc. has committed an unlawful employment practice in violation of Section 21.055 of the Texas Labor Code and/or Title VII by retaliating and discriminating against Plaintiff when she opposed and complained about the discriminatory practices of Hollman. When Plaintiff rejected Hollman's advance, he reduced her pay and constructively discharged her.

32. As a direct and proximate result of Hollman's conduct as set forth herein, Plaintiff has

suffered actual and compensatory damages, including back pay, front pay, loss of benefits past and future, loss of enjoyment of life, including emotional pain, suffering, inconvenience, and mental anguish. Plaintiff will show that Hollman's conduct as alleged herein was intentional and Hollman, Inc. acted with malice and/or reckless indifference entitling Plaintiff to compensatory and punitive damages as allowed by Section 21.2585 of the Texas Labor Code and/or Title VII.

### C. Invasion Of Privacy

33. Pursuant to Texas state law, Plaintiff pleads a cause of action against Defendants for invasion of privacy. The allegations contained in all of the paragraphs of this Complaint are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

34. Defendants intentionally invaded Plaintiff's mental: solitude, seclusion, and privacy and Plaintiff's physical solitude, seclusion, and privacy by intentionally:

   a. asking intensely personal questions;

   b. requiring her to be his date at various events;

   c. making sexually inappropriate comments;

   d. kissing Plaintiff;

   e. requiring Plaintiff to be subjected to sexual harassment;

   f. physically touching Plaintiff ; and

   g. continually harassing Plaintiff.

35. Plaintiff had a reasonable expectation of privacy in her private affairs and with regard to her body. Defendants did not have a legitimate business reason to harass and inappropriately touch Plaintiff.

36. Defendants intended such acts and comments for the purpose of invading Plaintiff's privacy. Said acts and comments were offensive, embarrassing, objectionable, and unreasonably invaded the privacy of the Plaintiff and would have offended any reasonable person.

37. Said acts were made without consent, permission, or privilege. As a direct and proximate result of said acts, Plaintiff has suffered and will suffer past, present, and future severe mental distress and anguish.

38. Said acts were also made in the course and scope of Ryan's employment with Defendant and in furtherance of Defendant's business.

39. As a direct and proximate result of Defendants' actions, inactions, customs, practices and policies, and Defendant's employees' invasion of Plaintiff's rights to privacy, Plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court.

### D. Assault & Battery

40. Pursuant to Texas state law, Plaintiff pleads a cause of action against Defendants for assault and battery. The allegations contained in all of the paragraphs of this Complaint are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

41. On several occasions Hollman inappropriately touched Plaintiff in a harmful and offensive manner. The touching was without consent or privilege and against Plaintiff's wishes. Hollman had no permission or justification for said offensive and harmful touching. Hollman's actions were not casual, negligent, or accidental contact, but were a deliberate, intentional, harmful and offensive touching.

42. Defendant's actions placed Plaintiff in great fear or apprehension of imminent bodily injury. As a direct and proximate result of Defendant's conduct as described above, Plaintiff suffered severe mental anguish and other damages in excess of the minimum jurisdictional limits of this Court.

43. Hollman's conduct described above was done within the course and scope of his employment with Defendant. Said actions were also represented to Plaintiff as being in furtherance of Defendant's business.

### E. Vicarious Liability

44. Plaintiff incorporates by reference all of the allegations set forth in the preceding paragraphs above as if fully set forth at this point herein.

45. Plaintiff will further show that Hollman is vicariously liable for the hostile work environment created by Plaintiff's supervisor and Plaintiff suffered a tangible employment action, i.e. reduction in pay and/or termination, as a result. Plaintiff has a prima facie case of sexual harassment in that she is a member of a protected group, i.e. females, who was subjected to unwanted conduct based on their gender, the conduct was objectively severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work environment, and Plaintiff subjectively perceived the conduct to be abusive.

46. Pursuant to Texas state law, Plaintiff pleads a cause of action against Defendant for vicarious liability. The allegations contained in all of the paragraphs of this Complaint are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

47.     At the time of the incidents in question, and at all times relevant to the lawsuit, Hollman is an agent, servant, and employee of Defendant, and at the time of the incidents in question was acting in the course and scope of his authority as an agent, servant, and employee of Defendant.

48.     Each of the above-referenced acts and omissions, singly or in combination with others proximately caused the damages Plaintiff suffered, which are in excess of the minimum jurisdictional limits of this Court.

### F. Attorney's Fees and Costs

49.     Plaintiff incorporates by reference all of the allegations set forth in the preceding paragraphs above as if fully set forth at this point herein.

50.     In addition to actual, compensatory and punitive damages, Plaintiff seeks to recover her reasonable and necessary attorney's fees and costs, including reasonable expert witness fees as permitted under Section 21.259 of the Texas Labor Code and/or Title VII.

## VII.

## JURY DEMAND

51.     Plaintiff demands that this Court empanel a lawful jury to hear this case.

## VIII.

## RESERVATION OF RIGHTS

52.     Plaintiff specifically reserves the right to bring additional causes of action against Defendants and to amend this Complaint as necessary.

## IX.

## PUNITIVE DAMAGES

53. As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff is entitled to exemplary damages in excess of the minimum jurisdictional limits of this court.

## X.

## DAMAGES FOR MENTAL ANGUISH

54. As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff has suffered and will suffer past, present and future severe mental anguish, for which she pleads to recover at trial. The damages for mental anguish exceed the minimum jurisdictional limits of this court.

## XI.

## CONDITIONS PRECEDENT

55. Plaintiff incorporates by reference all of the allegations set forth in the preceding paragraphs above as if fully set forth at this point herein.

56. Plaintiff has met all conditions precedent to her lawful recovery herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein and that upon final hearing, Plaintiff have and recover from Defendant as follows:

    a.    Actual damages within the jurisdictional limits of the Court;

    b.    Compensatory damages for future pecuniary losses, emotional pain, suffering, and inconvenience as allowed by Section 21.2585 of the Texas Labor Code and/or Title VII;

    c.    Punitive damages as allowed by Section 21.2585 of the Texas Labor Code and/or Title VII if Defendant's conduct is found to be made with malice or reckless indifference;

    d.    Pre-judgment and post-judgment interest at the highest rates allowed by law;

    e.    All reasonable and necessary attorneys' fees incurred as specified herein in accordance with Section 21.259 of the Texas Labor Code and/or Title VII;

    f.    All costs of court; and

    g.    Such other and further relief, at law or in equity, to which Plaintiff would show she is justly entitled.

Respectfully submitted,

BLANSCET, SUTHERLAND,
HOOPER & HALE, LLP

By:_____
**NELLIE G. HOOPER**
State Bar No. 00798211
**BARBARA T. HALE**
State Bar No. 24012762
14285 Midway Road, Suite 400
Addison, Texas 75001
(214) 764-7973
(972) 991-7981 Telecopy

ATTORNEYS FOR PLAINTIFF